**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---------------------------------------------------------------

| | | |
|---|---|---|
| MICHELE O'HARA | : | |
| 1125 Woodland Avenue | : | |
| Sharon Hill, PA 19079 | : | |
| Complaintant, | : | |
| | : | Civil Case No.: _____ |
| v. | : | |
| | : | **JURY TRIAL DEMANDED** |
| BURNS ENGINEERING, INC. | : | |
| Two Commerce Square | : | |
| 2001 Market Street, Ste. 600 | : | |
| Philadelphia, PA 19144 | : | |
| Defendant. | : | |

---------------------------------------------------------------

## COMPLAINT – CIVIL ACTION

Plaintiff, Michele O'Hara ("Plaintiff"), by and through her undersigned attorney, for her Complaint against the Burns Engineering, Inc., alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff initiates this action contending that Defendant interfered with and violated her rights under the Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e), *et seq.*, and the Philadelphia Fair Practices Ordinance ("PFPO"), ultimately terminating Plaintiff from her employment on the basis of her gender (female), in violation of Title VII and the PFPO. As a result, Plaintiff has suffered damages as set forth herein.

## PARTIES

2.      Plaintiff is a citizen of the United States and Pennsylvania and currently maintains an address located at 1125 Woodland Avenue, P.O. Box 1301, Sharon Hill, PA 19079.

3.      Defendant Burns Engineering, Inc. is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, and currently maintains a business located at 2001 Market Street, Ste. 600, Philadelphia, PA 19103.

## JURISDICTION AND VENUE

4.      Paragraphs 1 through 3 are hereby incorporated by reference as though the same were fully set forth at length herein.

5.      On or about November 19, 2019, Plaintiff filed a Complaint with the Philadelphia Commission on Human Relations ("PCHR") which was dually filed with the with the United States Equal Employment Opportunity Commission ("EEOC"), thereby satisfying the requirements of 29 U.S.C. § 621, *et seq.*  Plaintiff's PCHR Complaint was docketed as 2019-11-26-2498 and the EEOC charge was docketed as EEOC Charge No. 17G-2020-00035.  Plaintiff's PCHR Complaint and EEOC Charge were filed within three hundred (300) days of the unlawful employment practice.

6.      On October 19, 2020, the PCHR issued a Notice of Rights to Sue regarding her Complaint stating she had two years to file suit against Defendant.

7.      On April 30, 2021, the EEOC issued a Notice of Rights to Sue regarding her Complaint stating she had ninety (90) days to file suit against Defendant.

8.      Plaintiff filed this Complaint within the relevant statutory timeline.

9.      Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintaining this action.

10.      This action is authorized and initiated pursuant to Title VII.

11.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

12.      The Court has supplemental jurisdiction over Plaintiff's city ordinance claims because those claims arise out of the same nucleus of operative fact as the Title VII claims.

13.      The venue in this district is proper pursuant to 28 U.S.C. § 1391, inasmuch as the Defendant resides in this judicial district, doing business therein.

## FACTUAL BACKGROUND

14.     Paragraphs 1 through 13 are hereby incorporated by reference as though the same were fully set forth at length herein.

15.     In or around October 2001, Defendant hired Plaintiff into the position of CAD Coordinator/IT Help Desk and Software Coordinator.

16.     During my nearly eighteen (18) year tenure with Defendant, Plaintiff performed her job well, received positive feedback, occasional praise, no justifiable discipline, and received performance bonuses, including both merit and spot bonuses. Additionally, Plaintiff was a recipient of Defendant's Loyalty Award.

17.     Then, in or around November 2018, Defendant hired Matt McCloskey into the position of Information Technology ("IT") Director, who became my supervisor.

18.     At no time prior to the addition of Mr. McCloskey had she received any discipline or negative feedback regarding her duties, performance, and/or any other aspect of her work at Defendant.

19.     Subsequent to the addition of Mr. McCloskey, Plaintiff began being subjected to differential treatment on the basis of her sex/gender, female.

20.     On or about January 31, 2019, Plaintiff addressed her concerns to Mr. McCloskey and the IT Department, including Mr. McCloskey's supervisor, William Mecaughey, about who was handling the Help Desk requests. It came to her attention that Mr. McCloskey and herself would answer Help Desk questions. Indeed, some of the staff were confused as to who was answering the requests due to the "HelpDesk" email. Notably, Plaintiff sought clarity on this issue on two (2) other occasions with Mr. McCloskey to no avail.

21.    Immediately following her email, Plaintiff received her first verbal warning from Mr. McCloskey. Specifically, Mr. McCloskey informed her he thought her email to the IT Department seeking clarity on the Help Desk issue constituted "insubordination." Additionally, Mr. McCloskey stated he did not appreciate that Mr. Mecaughey was included in the email.

22.    At all times material hereto, Mr. McCloskey never addressed her duties under his supervision, including his expectations.

23.    Then, on or about January 12, 2019, Plaintiff received a formal written warning with respect to the aforementioned event.

24.    On or about January 29, 2019, Plaintiff was called to Mr. McCloskey's office. During their meeting, Mr. McCloskey wanted to ensure he and Plaintiff were "OK." Upon information and belief, this comment was with respect to their working relationship.

25.    By way of response, Plaintiff informed Mr. McCloskey that she was fine and understood her position in the company, she was there to work, and that she truly loves her job. Then, Mr. McCloskey asked if she "trusted him," and Mr. McCloskey assured Plaintiff that he "had [Plaintiff's] back as part of his team."

26.    Despite his reluctancy, Mr. McCloskey's repeatedly requested that she respond to whether she "trusted him." By way of response, Plaintiff addressed her concerns with respect to Mr. McCloskey's reading of employees' emails and the comments he has made in passing.

27.    Following the meeting, Mr. McCloskey sent via email correspondence a verbal warning alleging her "blunt" and "honest" behavior comes across as "unprofessional" and "insubordinate." Additionally, Mr. McCloskey stated that "if future unprofessional and "insubordinate." Additionally, Mr. McCloskey stated that "if future unprofessional and insubordinate communications like this persist, she will take further disciplinary action."

28.     Shortly thereafter, on or about January 31, 2019, Plaintiff received email correspondence regarding an IT problem.

29.     Before answering the email, Plaintiff was addressed by Mr. McCloskey to respond to the email "with the intelligent female brain you have I know you have," in a highly offensive and condescending tone.

30.     Upon information and belief, this was one of the factors that lead her to believe Mr. McCloskey was reading her emails, as she had received an email for assistance from an employee and Mr. McCloskey came to her desk to address the response.

31.     Notably, immediately following Mr. McCloskey's comment, Kelly Neilson, with whom she shared a cubicle, turned to her and asked "Did you he really just say that to you?

32.     Following Mr. McCloskey's comment, on or about January 31, 2019, Plaintiff made a complaint to Morgan Gerwitz, Defendant's Human Resources ("HR") Business Partner. Specifically, she complained of the sexist comment and differential treatment to which she was subjected.

33.     Indeed, on or about February 1, 2019, Ms. Gerwitz emailed Plaintiff following up their conversation and identifying it as only "communication issues."

34.     Shortly after her complaint to HR, Mr. McCloskey began removing and/or reducing her job duties/work-load.

35.     Additionally, Mr. McCloskey directed her to create a comprehensive manual outlining her job duties and processes IT Help Desk support. Additionally, Mr. McCloskey requested she hand over her CAD manual to David Whestone, including detailed instruction on how to perform the essential functions of the position.

36.     On or about April 24, 2019, Plaintiff did not receive her Southeastern Pennsylvania Authority ("SEPTA") transit pass, which typically is issued prior to the start of a new month. Ultimately, Plaintiff was directed to buy her own personal SEPTA transit pass for the month of May 2019.

37.     Notably, upon her inquiry with Defendant's third-party transit pass distributer, PayFlex. PayFlex notified her that the transit pass was not mailed because PayFlex had been informed by Defendant that she was "to be terminated on May 1, 20191; therefore, [Plaintiff is] not eligible for May's pass." It should be noted Defendant's alleged explanation that her transit pass was "lost in the mail" is inconsistent with PayFlex's affirmation that it was never issued.

38.     During her discussions with PayFlex, she was transferred to a PayFlex Supervisor, Lori (last name unknown) ("Lori LNU"), informed her that she was not terminated that there was a "process" regarding unreceived SEPTA transit passes and that she would receive a call back.

39.     Indeed, Plaintiff did not receive a call back from Lori LNU. Rather, Plaintiff received an email from Patricia Tuso, Defendant's Director of HR, informing her that all further communication and/or grievances should go through Ms. Gerwitz or Ms. Tuso.

40.     On or about May 1, 2019, Defendant abruptly terminated her employment allegedly due to "outsourcing." Specifically, Mr. McCloskey, along with Patricia Tuso, Defendant's Director of HR, informed her that her position had been eliminated and outsourced to be handled by PCS (Pro-Computing Services).

41.     Notably, on at least three (3) occasions, Defendant informed her "no one is going to be outsourced."

6

42.     At the time of her termination, Defendant had, and, upon information and belief, continues to have, a continued need for an individual in the position of CAD Coordinator. Additionally, Defendant had other positions available for which she was qualified.

43.     Indeed, at the time of her termination, there were no less than two (2) available CAD Coordinator positions.

44.     Notably, on or about May 15, 2019, contrary to Defendant's alleged "outsourcing," Plaintiff viewed an employment advertisement by Respondent for the position of Technical Support Special, consisting of similar and/or the same job duties as IT Help Desk. Indeed, the majority of duties Plaintiff performed were IT Help Desk Support.

45.     At not point was Plaintiff offered and/or considered for a new and/or alternative position with Defendant.

46.     Based on the foregoing, it was evident that Defendant discriminated against Plaintiff on the basis of her sex/gender (female) and retaliated against Plaintiff for her complaints in connection thereto.

47.     Accordingly, Plaintiff believes and thus avers that she was terminated and not offered another position on the basis of her gender (female), and in retaliation for her complaints in connection thereto, in violation of Title VII and the PFPO.

48.     As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, earnings and earnings potential, loss of potential bonuses, and other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to her reputation.

**COUNT I**
**TITLE VII – 42 U.S.C. § 2000e** *et seq.*
**SEX/GENDER DISCRIMINATION AND RETALIATION**

49.     Plaintiff repeats and incorporates the foregoing 48 paragraphs as though the same were fully set forth at length herein.

50.     Defendant employed at least fifteen (15) employees throughout its various office locations at all times material hereto.

51.     Defendant discriminated against Plaintiff and subjected to her to differential treatment on the basis of her gender/sex.

52.     Plaintiff made good faith complaints to Defendant's HR of sex/gender discrimination and/or differential treatment on the basis of sex/gender. Defendant failed to take appropriate remedial action in connection thereto.

53.     Defendant took affirmative discriminatory action against Plaintiff on the basis of her gender (female) and in retaliation for her complaints in connection thereto, by terminating Plaintiff from employment and failing to offer her any alternate positions, in violation of Title VII.

54.     Defendant acted with malice and with reckless indifference to Plaintiff's civil rights and emotional and physical well-being.

55.     Because of Defendant's unlawful acts, Plaintiff has suffered damages in the form of, *inter alia*, loss of past and future wages and compensation, mental and emotional damages, loss of reputation, personal humiliation, and loss of life's enjoyment.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

a)     Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

b)     Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

c)     Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this action;

d)     Any verdict in favor of Plaintiff is to be molded by this Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable federal law;

e)     Pre-judgment interest in an appropriate amount; and

f)     Such other and further relief as is just and equitable under the circumstances.

**COUNT II**
**PHILADLEPHIA FAIR PRACTICES ORDINANCE**
**§ 9-1100, *et. seq***
**GENDER/SEX  DISCRIMINATION AND RETALIATION**

56.     Paragraphs 1 through 55 are hereby incorporated by reference as if the same were more fully set forth at length herein.

57.     At all times relevant hereto, Plaintiff was an employee within the meaning of the Philadelphia Fair Practices Ordinance Code ("PFPO"), § 9-1100, *et. seq.*

58.     At all times relevant hereto, Defendant had at least one (1) employee.

59.     Defendant discriminated against Plaintiff and subjected to her to differential treatment on the basis of her gender/sex.

60.     Plaintiff made good faith complaints to Defendant's HR of sex/gender discrimination and/or differential treatment on the basis of sex/gender. Defendant failed to take appropriate remedial action in connection thereto.

61.     Defendant took affirmative discriminatory action against Plaintiff on the basis of her gender (female) and in retaliation for her complaints in connection thereto, by terminating Plaintiff from employment and failing to offer her any alternate positions, in violation of Title VII.

62.     Defendant acted with malice and with reckless indifference to Plaintiff's civil rights and emotional and physical well-being.

63.     Because of Defendant's unlawful acts, Plaintiff has suffered damages in the form of, *inter alia,* loss of past and future wages and compensation, mental and emotional damages, loss of reputation, personal humiliation, and loss of life's enjoyment.

**WHEREFORE,** as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A.     Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B.     Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C.     Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this matter;

D.     Pre-judgment interest in an appropriate amount;

E.     Such other and further relief as is just and equitable under the circumstances; and

F.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable federal law.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issue so triable.

Respectfully submitted,

**MURPHY LAW GROUP, LLC**

By:      */s/ Preeya Bansal*
        Preeya Bansal, Esq.
        Michael Murphy, Esq.
        Eight Penn Center, Suite 2000
        1628 John F. Kennedy Blvd.
        Philadelphia, PA 19103
        TEL: 267-273-1054
        FAX: 215-525-0210
        pbansal@phillyemploymentlawyer.com
        murphy@phillyemploymentlawyer.com
        Attorney for Plaintiff

Dated:  June 25, 2021

## <u>DEMAND TO PRESERVE EVIDENCE</u>

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims and her claims to damages, to any defenses to the same, including, but not limited to, electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.